**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT E. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 6558 |
| | ) | |
| FRIEND FAMILY HEALTH CENTER, INC., a corporation, and | ) ) | Honorable Judge John W. Darrah |
| | ) | |
| REV. HENRY BARLOW, an individual, | ) ) | Magistrate Judge Denlow |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF ROBERT E. TAYLOR'S
FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Robert E. Taylor, by and through his attorneys, Jenner & Block LLP, alleges the following:

**NATURE OF THE CLAIM**

1. Plaintiff Robert Taylor brings this action seeking redress for the discriminatory and retaliatory acts of his ex-employer, Friend Family Health Center, Inc. Plaintiff asserts claims under Title VII, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq*. Moreover, Plaintiff asserts various state law claims against his ex-employer, as well as against an individual defendant.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction of the action under 28 U.S.C. § 1343(a)(3) and (4) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3.	Venue is proper in the Northern District of Illinois pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1345.

## PARTIES

4.	Robert Taylor (hereinafter "Taylor" or "Plaintiff") is an individual and a citizen of the United States.  He currently resides in Chicago, Illinois.

5.	Plaintiff was an employee of Defendant, Friend Family Health Center, Inc. (hereinafter "FFHC" or "Defendant FFHC"), and Plaintiff worked for Defendant FFHC in the state of Illinois.

6.	Defendant FFHC is a not-for-profit Illinois corporation doing business in the state of Illinois with its corporate headquarters at 800 East 55th Street, Chicago, Illinois, 60615.

7.	Rev. Henry Barlow (hereinafter "Barlow" or "Individual Defendant") is an individual and a citizen of the United States.  He currently resides in Chicago, Illinois.

8.	At all relevant times, Defendant FFHC employed more than fifteen (15) employees and therefore constitutes an "employer" within the meaning of the relevant statutes.

## PROCEDURAL REQUIREMENTS

9.	Plaintiff has fulfilled all conditions precedent to the filing of this action under Title VII, as amended by the Civil Rights Act of 1991.  On September 3, 2004, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission.  Plaintiff received a Right to Sue letter on August 23, 2007.  The Right to Sue letter is attached hereto and made part hereof as Exhibit A.  Plaintiff timely filed his original complaint in this Court on November 20, 2007.

**FACTUAL BACKGROUND**

10. Plaintiff began his employment with Defendant FFHC in May 2002 as Chief Executive Officer (CEO) and Chief Financial Officer (CFO). During his entire employment with Defendant FFHC, Plaintiff held the concurrent positions of CEO and CFO.

11. Plaintiff has a bachelor's degree in accounting from Illinois State University, has more than fifteen years of experience in accounting, and is a Certified Public Accountant. At all times during his employment with Defendant FFHC, Plaintiff satisfactorily performed his job.

12. At all relevant times, Defendant FFHC maintained a written "No Tolerance for Sexual Harassment Policy," which Defendant FFHC distributed to all employees upon the commencement of their employment. The policy states:

> Any employee who believes he or she is being discriminat[ed] [sic] against or harass[ed] [sic] based on any of the grounds stated above should report it immediately to his or her direct supervisor or to the human resources department….Under no circumstances will an employee be penalized for reporting what the employee believes in good faith to be harassment under this policy. If you believe that you are being retaliated against for bringing a complaint of harassment or discrimination, you should report such conduct immediately to your direct supervisor or to the human resources department.

13. On December 22, 2003, Carol Sissac (hereinafter "Sissac"), a female employee of Defendant FFHC, reported an incident of sexual harassment to Plaintiff, her supervisor. Sissac verbally reported to Plaintiff that Barlow, Defendant FFHC's Chairman of the Board, had sexually harassed her.

14. On December 23, 2003, Sissac again reported to Taylor that Barlow had further sexually harassed her.

15. During her reports to Plaintiff, Sissac alleged that Barlow had harassed her by asking her to dinner and aggressively demanding she give him an answer on multiple occasions.

3

With Plaintiff's assistance, Sissac gave the same verbal report to Defendant FFHC's Interim Human Resources Director, Pilar McKinney (hereinafter "McKinney") who recorded Sissac's statement in a written document.

16. In an effort to stop Barlow's on-going harassment of Sissac, and in good faith reliance on Sissac's report, Plaintiff took steps to address Sissac's claim of sexual harassment. First, Plaintiff called Thomas Jones (hereinafter "Jones"), Defendant FFHC's Vice-Chairman of the Board and Chairman of the Human Resources Committee, and reported Sissac's allegations. Second, Plaintiff tried to contact several other members of the Board, but had limited success because of the holiday season.

17. Barlow discovered Sissac's allegations against him almost immediately after Plaintiff called Jones.

18. Upon learning of Sissac's allegations, Barlow became furious with Plaintiff and Sissac. On January 14, 2004, Barlow threatened Plaintiff and FFHC employees sympathetic to Sissac by stating, "[N]ever had my name been dragged in the mud in my entire life until I associated myself with [FFHC], and you will pay for it for not protecting me and my name."

19. Defendant FFHC's "No Tolerance for Sexual Harassment Policy" directs FFHC to investigate any complaint of sexual harassment or retaliation and make a written report following the investigation.

20. When Plaintiff tried to arrange a third-party investigation of the claims as early as January 2004, Barlow thwarted those efforts by refusing to authorize payment of the investigator and by indicating his outrage that a "man of God" could be accused of such actions.

21. Between December 2003 and March 2004, Plaintiff repeatedly requested that the Board of Directors investigate Sissac's claim.

4

22. Defendant FFHC's Board of Directors waited, however, until April 2004—over four months after Sissac's allegations—to investigate the claims.

23. Beginning in January 2004, infuriated by Plaintiff's persistence in seeking to investigate Sissac's claim, Barlow intensified his campaign of harassment and retaliation against Plaintiff and those employees sympathetic to Sissac's allegations.

24. At a Board meeting on January 28, 2004, Barlow moved unsuccessfully for the immediate termination of Plaintiff.

25. As part of his campaign, Barlow began a concerted effort against Plaintiff in an effort to construct a seemingly valid reason to terminate Plaintiff's employment. For example, Barlow began identifying alleged errors committed by Plaintiff during his employment.

26. In addition, Barlow recruited ex-employees—whom Plaintiff had previously terminated—to air their grievances against Plaintiff at Board meetings, including the January 28, 2004 meeting.

27. As a representative example, Barlow recruited previously terminated FFHC employee Michelle Ewing (hereinafter "Ewing") to provide negative comments to the Board about Plaintiff, and, in exchange, Barlow approved Ewing's re-hiring at FFHC.

28. On January 29, 2004, Barlow's friend and fellow Board member, Rev. Thomas Varughese (hereinafter "Varughese"), called Plaintiff and pressured Plaintiff to "drop" Sissac's allegations. Varughese suggested that smoothing the situation with Barlow would help ensure that Plaintiff kept his job with Defendant FFHC. Plaintiff thanked Varughese for his concern, but stated that Defendant FFHC had an obligation to investigate the claim.

29. On February 12, 2004, Plaintiff arrived at work to find his office door covered in pry marks, indicating that someone with access to the FFHC had broken the lock for his office.

Plaintiff found many items missing, including his signed employment agreement, certain personnel records, audio cassette tapes of Board meetings and other company documents (hardcopy and electronic).

30.    Plaintiff filed a police report about this burglary on the same day.

31.    On February 20, 2004, Plaintiff formally informed Defendant FFHC's Board of Barlow's continued retaliation.  In this memo, Plaintiff specifically outlined Barlow's "attempts to intimidate and retaliate for [Plaintiff's] involvement in claims made against him [Barlow]…."

32.    Defendant FFHC's Board never formally acknowledged receipt of the February 20, 2004 memo and did nothing to investigate or prevent Barlow's harassing actions towards Sissac or his retaliatory actions towards Plaintiff.

33.    The culmination of Defendant FFHC's and Barlow's retaliatory actions towards Plaintiff occurred on March 3, 2004, when Barlow, Jones and Board Secretary Leticia Ransom (hereinafter "Ransom") held a meeting and terminated Taylor.  Defendant FFHC gave Taylor no reason for his termination at this time.

34.    Indeed, Defendant FFHC did not articulate a reason for Plaintiff's termination until nearly one month after the termination, and did so only in connection with Plaintiff's seeking unemployment compensation.

35.    In unlawfully terminating Plaintiff's employment, creating a hostile work environment and committing various acts of retaliation against Plaintiff for reporting and opposing instances of sexual harassment, Defendant FFHC treated Plaintiff differently than similarly situated employees who remained uninvolved with the reporting of Sissac's claims and unopposed to Barlow's harassment of Sissac.

36.    Defendant FFHC's and Barlow's retaliatory acts did not stop even after Plaintiff was terminated.  In April 2004, Defendant FFHC's Board fired the Accounting Manager of

6

FFHC, James Obese (hereinafter "Obese"), immediately after Obese provided a statement to FFHC's investigator confirming Barlow's retaliation against Plaintiff.

37. Additionally, in May 2004, Defendant FFHC fired Sissac, the alleged victim of Barlow's sexual harassment, shortly after the close of the investigation into her claims.

38. Defendant FFHC and Barlow have continued their campaign of retaliation and harassment against Plaintiff to this very day by giving poor references to Taylor's potential employers.

39. Upon information and belief, in or about the time period from November 2006 to present, Plaintiff applied for certain employment opportunities at a variety of potential employers, including but not limited to: (a) the Mary Crane Center; (b) the Oak Park Community Health Center; and (c) St. Alexian Brothers Hospital Network.

40. Upon information and belief, each one of these potential employers called Defendant FFHC to obtain references about Plaintiff's employment with Defendant FFHC.

41. Upon information and belief, during each telephone conversation between the potential employer and Defendant FFHC, Defendant FFHC gave false and outrageous information about Plaintiff to Plaintiff's potential employer, including but not limited to information accusing Plaintiff of felonies and misdemeanors, unethical behavior, and inappropriate sexual behavior.

42. Because of the nature of the statements provided by Defendant FFHC, Taylor could not, and still cannot, secure gainful employment, thus frustrating his career and reputation.

43. After being rejected by countless employers, Taylor suffered a financial collapse, resulting in the foreclosure of his house.

44. Moreover, the stress proximately caused by Barlow and Defendant FFHC resulted in Plaintiff suffering a variety of physical and emotional damage, such as severe anxiety, nausea, headaches, depression, sleepless nights, lack of trust, fear, and fatigue.

## COUNT I:
## RETALIATION IN VIOALTION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000E-3(A)

45. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 44 as this paragraph 45, as if fully set forth herein.

46. Title VII, 42 U.S.C. § 2000e-3(a) prohibits employers from engaging in retaliatory conduct against an employee who participates in a proceeding under Title VII or who opposes any practice made an unlawful employment practice by Title VII.

47. Plaintiff engaged in protected expression under the foregoing provision of Title VII by complaining to Defendant FFHC about the Chairman of the Board's sexual harassment of a fellow female co-worker and opposing the Chairman's sexual harassment of that co-worker, actions which the Plaintiff reasonably and in good faith believed to be unlawful.

48. Plaintiff also attempted to exercise his rights under the foregoing provision of Title VII by complaining to Defendant FFHC regarding the retaliatory actions being taken against Plaintiff himself for having reported the instances of alleged sexual harassment.

49. Instead of resolving these complaints, Defendant FFHC engaged in a pattern of harassment and further retaliation against Plaintiff that affected the terms and conditions of his employment and showed total inaction and disregard towards resolving the situation.

50. Plaintiff suffered adverse employment actions, including but not limited to verbal harassment, verbal threats, unwarranted disciplinary action, heightened scrutiny, and termination as a proximate result of his engaging in protected activity.

51. The retaliation continued in the form of false references even after Defendant FFHC terminated Plaintiff's employment.

52. Ultimately, Defendant FFHC terminated Plaintiff because Plaintiff opposed conduct which Plaintiff, reasonably and in good faith, believed to be unlawful.  Any other reason to the contrary that Defendant FFHC offers is pretextual for Defendant FFHC's retaliatory motivation.

53. Defendant FFHC, by and through its agents, engaged in the foregoing acts and conduct when it knew or should have known that the same violated Title VII.  Any other reason to the contrary that Defendant FFHC offers is pretextual.

54. Defendant FFHC's and Barlow's wrongful acts were outrageous, malicious, deliberate, intentional, willful and wanton and in total disregard for Plaintiff's civil rights.

55. As a direct and proximate result of the acts engaged in by the Defendant, Plaintiff suffered severe financial damages, including but not limited to:

(i)     loss of pay and benefits, past and future;

(ii)    loss of future earnings and other benefits of employment;

(iii)   severe emotional distress, humiliation and embarrassment;

(iv)    damage to his reputation;

(v)     attorneys' fees and costs; and

(vi)    other damages allowed under Title VII.

56. As alleged above, Plaintiff has exhausted his administrative remedies for the Title VII violations described herein.

WHEREFORE, Plaintiff, ROBERT E. TAYLOR, respectfully requests judgment against Defendant, FRIEND FAMILY HEALTH CENTER, INC., in an amount that will fully

compensate him for his injuries and damages of the past and future for Defendant's violation of Plaintiff's rights, including but not limited to:

    (i)    back pay;

    (ii)    front pay or, in the alternative, reinstatement;

    (iii)    compensatory damages;

    (iv)    punitive damages;

    (v)    liquidated damages;

    (vi)    prejudgment interest

    (vii)    attorneys' fees and costs and/or

    (viii)    any other relief the Court deems equitable and just.

## COUNT II:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST PLAINTIFF BY DEFENDANT FFHC

57. Plaintiff repeats and realleges Paragraphs 1 through 56 as this paragraph 57, as if fully set forth herein.

58. On information and belief, Defendant FFHC engaged in an outrageous campaign to terminate Plaintiff's employment and destroy his career.

59. Defendant FFHC's Chairman of the Board stated that those employees who defended Sissac's Title VII rights would "pay for it." And, indeed, Defendant FFHC followed-through on those remarks by campaigning to destroy Plaintiff's life.

60. On information and belief, Defendant FFHC's campaign included the following outrageous acts:

    (a)    Defendant FFHC threatened to fire Plaintiff if he continued to oppose Barlow's sexual harassment of Sissac;

(b)     Defendant FFHC placed a phone call to Plaintiff to warn Plaintiff to stop opposing Barlow's sexual harassment of Sissac;

(c)     Defendant FFHC forcibly entered Plaintiff's office to obtain documents and items from Plaintiff's office in an effort to establish a pretextual reason to fire Plaintiff;

(d)     Defendant FFHC systematically and surreptitiously bartered with employees and ex-employees at FFHC to air grievances and spread falsehoods about Plaintiff; and

(e)     Upon information and belief, Defendant FFHC made numerous false and/or inflammatory statements about Plaintiff to Plaintiff's potential employers, resulting in Plaintiff's inability to secure gainful employment.

61.     Defendant FFHC acted with malice, ill will and spite.

62.     Defendant FFHC's outrageous acts have caused severe emotional damage to Plaintiff including severe anxiety, nausea, headaches, depression, sleepless nights, lack of trust, fear, and fatigue.

63.     Defendant FFHC's outrageous acts have irreparably damaged Plaintiff's financial situation by crippling him from obtaining employment.  This situation has left Plaintiff in dire financial straits and has resulted in Plaintiff losing his house to foreclosure.

64.     Defendant FFHC's outrageous acts were committed with intent to cause severe emotional distress or reckless disregard as to the high probability of causing severe emotional distress.

65.     Defendant FFHC has no justification for his outrageous acts.

WHEREFORE, Plaintiff, ROBERT E. TAYLOR, respectfully requests judgment against Defendant, FRIEND FAMILY HEALTH CENTER, INC., in an amount that will fully compensate him for his injuries and damages of the past and future, including but not limited to:

(i) compensatory damages;

(ii) punitive damages; and

(iii) any other relief the Court deems equitable and just.

## COUNT III:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST PLAINTIFF BY INDIVIDUAL DEFENDANT BARLOW

66. Plaintiff repeats and realleges Paragraphs 1 through 65 as this paragraph 66, as if fully set forth herein.

67. On information and belief, Barlow engaged in an outrageous campaign to terminate Plaintiff's employment and destroy his career.

68. Barlow stated that those employees who defended Sissac's Title VII rights would "pay for it." And, indeed, Barlow followed-through on those remarks by using his position at the FFHC to destroy Plaintiff's life.

69. On information and belief, Barlow's campaign included the following outrageous acts:

(a) Barlow threatened to fire Plaintiff if he continued to oppose Barlow's sexual harassment of Sissac;

(b) Barlow pressured Plaintiff to forget about Sissac's claims, including having friend and fellow Board member Jones place a phone call to Plaintiff. This phone call warned Plaintiff to stop opposing Barlow's sexual harassment of Sissac;

　　　　　　(c)　　Upon information and belief, Barlow used or encouraged forcible entry into Plaintiff's office to obtain documents and items from Plaintiff's office in an effort to establish a pretextual reason to fire Plaintiff;

　　　　　　(d)　　Barlow systematically and surreptitiously bartered with employees and ex-employees at FFHC to air grievances and spread falsehoods about Plaintiff; and

　　　　　　(e)　　Upon information and belief, Barlow made or encouraged numerous false and/or inflammatory statements about Plaintiff to Plaintiff's potential employers, resulting in Plaintiff's inability to secure gainful employment.

　　70.　　Barlow acted with malice, ill will and spite.

　　71.　　Barlow's outrageous acts have caused severe emotional damage to Plaintiff including severe anxiety, nausea, headaches, depression, sleepless nights, lack of trust, fear, and fatigue.

　　72.　　Barlow's outrageous acts have irreparably damaged Plaintiff's financial situation by crippling him from obtaining employment.  This situation has left Plaintiff in dire financial straits and has resulted in Plaintiff losing his house to foreclosure.

　　73.　　Barlow's outrageous acts were committed with intent to cause severe emotional distress or reckless disregard as to the high probability of causing severe emotional distress.

　　74.　　Barlow has no justification for his outrageous acts.

　　WHEREFORE, Plaintiff, ROBERT E. TAYLOR, respectfully requests judgment against Defendant, REV. HENRY BARLOW, in an amount that will fully compensate him for his injuries and damages of the past and future, including but not limited to:

　　(i)　　compensatory damages;

　　(ii)　　punitive damages; and

(iii)    any other relief the Court deems equitable and just.

                                          Respectfully submitted,

                                          ROBERT E. TAYLOR,

Dated:  April 14, 2008

                                          By:    s/ Elizabeth Coleman
                                                        One of His Attorneys

Elizabeth Coleman (*IARDC # 6236597*)
Sara P. Leitenberger (*IARDC # 6293214*)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, Illinois  60611
Telephone (312) 923-2659
Facsimile:  (312) 840-7659

**CERTIFICATION OF SERVICE**

      I hereby certify that on Monday, April 14, 2008, I electronically filed the foregoing Motion for Leave to Add an Additional Party to Plaintiff Robert Taylor's First Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Paul E. Bateman
Michael A. Wilder
LITTLER & MENDELSON, P.C.
200 N. LaSalle Street
Suite 2900
Chicago, IL  60601

                                                  s/ Elizabeth Coleman
                                                  Elizabeth Coleman
                                                  IARDC # 6236597
                                                  JENNER & BLOCK LLP
                                                  330 N. Wabash Avenue
                                                  Chicago, Illinois  60611
                                                  Telephone (312) 923-2659
                                                  Facsimile:  (312) 840-7659