# EXHIBIT E

Case 1:07-cv-06558   Document 27-5   Filed 05/06/2008   Page 1 of 8

LEXSEE


Positive
As of: May 05, 2008

MICHAEL C. MADDIE, Plaintiff, vs. SIEBEL SYSTEMS, INC., a Delaware Corporation, and DONALD O'SHEA, Defendants.

No. 04 C 3419

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2004 U.S. Dist. LEXIS 22511

November 4, 2004, Decided
November 5, 2004, Docketed

**DISPOSITION:** Defendant's motion to dismiss granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendants, the employer and a former supervisor, alleging defamation, tortious interference with a contract, civil assault, tortious supervision, tortious retention, tortious investigation, breach of contract, and intentional infliction of emotional distress (IIED). Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** The employee alleged that the supervisor did not like him and denied the employee's transfer requests by, inter alia, telling others that the employee had a performance issue. The employee was terminated after an altercation with the supervisor, during which the employee thought that the supervisor was about to physically attack him. The court determined that the employee's defamation claim survived dismissal because (1) the court could not conclude that the claim was barred by the statute of limitations, 735 Ill. Comp. Stat. 5/13-201, since the employee alleged facts that could trigger the use of the discovery rule; (2) the statement that the employee was being counseled for a performance issue was not a constitutionally protected opinion; and (3) the employer could be liable since the court could not conclude that the defamatory statement fell outside the scope of the supervisor's employment. However, Illinois did not recognize a cause of action for negligent or tortious investigation. Also, the IIED claim failed because the supervisor's conduct did not rise to the required level of outrageous conduct.

**OUTCOME:** The court granted defendants' motion to dismiss as to the IIED claim and the claim of tortious investigation. The court denied defendants' motion to dismiss as to the remaining claims.

**CORE TERMS:** tortious, defamatory statement, emotional distress, severe, supervision, expectancy, retention, assault, cause of action, defamation, statute of limitations, constitutionally protected, outrageous, counseled, tortious interference, outrageous conduct, infliction, eligible, notice, resignation, contacted, unfitness, discovery rule, defamation actions, objectively verifiable, vicariously liable, own contract, intentionally, supervisor, terminated

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1]The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the legal sufficiency of a complaint not the merits of the case. The well-pled allegations of a complaint must be accepted as true. The courts construe ambiguities in favor of the plaintiff. The plaintiff can plead conclusions and need not allege all or any facts entailed by the claim.

Exhibit E

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Governments > Legislation > Statutes of Limitations > Pleading & Proof*
[HN2]Courts should only grant a motion to dismiss based on statute of limitations if the plaintiff can prove no set of facts that would support a cause of action. 735 Ill. Comp. Stat. 5/2-619.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Torts > Intentional Torts > Defamation > Defenses > Statutes of Limitations*
*Torts > Procedure > Statutes of Limitations > General Overview*
[HN3]Illinois has a one-year statute of limitations in defamation actions. 735 Ill. Comp. Stat. 5/13-201. In certain defamation actions, however, courts have applied the discovery rule. Specifically, if the confidential nature of the defendant's publication prohibits the plaintiff from early discovery of the defamation, then the statute of limitations commences when the plaintiff knew or should have known of the defamatory statements, not from the date of publication. Courts have applied this reasoning to oral statements as well as written communications when the plaintiff was not present at the time of the statement and the statement was not made publicly.

*Torts > Intentional Torts > Defamation > Defenses > Privileges > Constitutional Privileges*
[HN4]The Illinois Supreme Court has held that statements are only constitutionally protected when they cannot reasonably be interpreted as stating actual facts.

*Torts > Intentional Torts > Defamation > Elements > General Overview*
*Torts > Vicarious Liability > Employers > Activities & Conditions > General Overview*
*Torts > Vicarious Liability > Employers > Scope of Employment > Application of State Law*
[HN5]In order to hold an employer in Illinois vicariously liable for an employee's torts under the doctrine of respondeat superior, the employee must have committed the torts within the scope of his employment. An employer is subject to liability for defamatory statements made by an employee acting within the scope of employment. The question of whether an act falls within the scope of an employee's employment generally lies with the jury.

*Contracts Law > Breach > General Overview*
*Torts > Business Torts > Commercial Interference > Employment Relationships > Elements*
*Torts > Business Torts > Commercial Interference > Prospective Advantage > General Overview*
[HN6]In order to succeed on a claim of tortious interference with an employment expectancy, a plaintiff must show: (1) the existence of a contract or a reasonable expectation of a continued business relationship; (2) the defendant's knowledge of the contract or expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach of the contract or prevented the expectancy from ripening; and (4) damage resulting from the interference.

*Contracts Law > Third Parties > General Overview*
*Torts > Business Torts > Commercial Interference > Contracts > General Overview*
[HN7]A party cannot tortiously interfere with his own contract. The tortfeasor must be a third party to the contractual relationship.

*Torts > Business Torts > Commercial Interference > Contracts > General Overview*
[HN8]A defendant employee and a defendant company are not one in the same for purposes of the tortuous interference analysis if the defendant employee acted on his own behalf and not in the company interest.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN9]Under the federal rules, a party may state as many claims as the party has, regardless of consistency. Fed. R. Civ. P. 8(e)(2). The plaintiff is entitled to plead in the alternative.

*Torts > Business Torts > General Overview*
[HN10]Illinois does not recognize a cause of action for negligent or tortious investigation.

*Civil Procedure > Federal & State Interrelationships > Erie Doctrine*
*Governments > Courts > Authority to Adjudicate*
[HN11]Federal courts have no power to create state law.

*Torts > Business Torts > General Overview*

[HN12]A "negligent undertaking" claim in Illinois concerns primarily voluntary undertakings that result in bodily harm to a plaintiff.

*Contracts Law > Breach > Causes of Action > General Overview*
[HN13]To prevail on a breach of contract claim under Illinois law, a plaintiff must establish (1) the existence of a valid and enforceable contract, (2) his own performance under the terms of the contract, (3) a breach of the contract by the defendant, and (4) an injury suffered as a result of the defendant's breach.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN14]Federal court is a notice pleading jurisdiction; therefore, complaints need not contain elaborate factual recitations.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN15]Documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss.

*Torts > Damages > Compensatory Damages > Pain & Suffering > Emotional & Mental Distress > General Overview*
*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview*
[HN16]Under Illinois law, to state a cause of action for intentional infliction of emotional distress, a plaintiff must plead: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct caused severe emotional distress. Recovery under this theory does not extend to conduct which merely involves insults, indignities, threats, annoyances, petty oppressions, or other trivialities. With respect to the severity of the plaintiff's distress, the law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > Elements*
[HN17]In the context of a claim of intentional infliction of emotional distress, the United States Court of Appeals for the Seventh Circuit has held that even with liberal notice pleading standards, the plaintiff must show that the defendants' actions were objectively outrageous and the harm caused was very severe to survive a motion to dismiss.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress > General Overview*
[HN18]In the context of a claim for intentional infliction of emotional distress under Illinois law, while losing one's job and having to relocate to find new employment is stressful, it alone does not rise to the level of severe emotional harm.

**COUNSEL:** [*1] For MICHAEL C MADDIE, Plaintiff: Penny Nathan Kahan, Michael John Merrick, Kristin Meridith Case, Penny Nathan Kahan and Associates, Ltd., Chicago, IL.

For SIEBEL SYSTEMS, INC., A DELAWARE CORPORATION, DONALD O'SHEA, Defendant: Brian Wegg Bulger, Eileen Elizabeth Baker, Meckler, Bulger & Tilson, Chicago, IL.

**JUDGES:** AMY J. ST. EVE, District Court Judge.

**OPINION BY:** AMY J. ST. EVE

**OPINION**

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Michael Maddie filed a complaint against his former employer, Siebel Systems, Inc. and his former supervisor, Donald O'Shea, alleging: defamation (Count I); tortious interference with a contract (Count II); civil assault (Count III); tortious supervision, retention, and investigation (Count IV); breach of contract (Count V); and intentional infliction of emotional distress. (Count VI). Defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For reasons stated herein, the Court denies Defendants' motion to dismiss Counts I, II, III, and V, grants in part and denies in part their motion to dismiss Count IV, and grants their motion to dismiss Count VI.

**LEGAL** [*2] **STANDARDS**

[HN1]The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a com-

plaint not the merits of the case. *Triad. Assocs, Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir. 1989). The well-plead allegations of a complaint must be accepted as true. *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002). The courts construe ambiguities in favor of the plaintiff. *Id.* Plaintiff can plead conclusions and need not allege all or any facts entailed by the claim. *Shah v. Inter-Continental Hotel Chicago Operating Corp.,* 314 F.3d 278, 282 (7th Cir. 2003).

## BACKGROUND

For the purpose of this Opinion, the following facts are accepted as true. Siebel Systems, in Rosemont, Illinois, is engaged in the business of developing customer relationship management software and providing consulting services to implement software. Michael Maddie began working as a consultant for Siebel Systems in June of 2000. (R. 1-1, Pl's Comp. P 7.) Donald O'Shea was one of Maddie's supervisors. (*Id.* at P 21.) In October or November of 2002, Maddie expressed an interest in transferring [*3] into another group within the company - the Customer Relationship Management Strategy Group ("CRM"). (*Id.* at P 20.) CRM offered Maddie a position pending approval of management including Donald O'Shea. (*Id.* at PP 20-21.) When O'Shea learned of Maddie's possible transfer he was furious and told another manager, "I don't like this guy. I'm not going to transfer him, I'm just going to fuck with him and use him until he leaves." (*Id.* at P 22.) O'Shea allegedly thereafter denied Maddie's transfer request and told representatives of the CRM Strategy Group that, "[Maddie] was a performance issue and being counseled and therefore was not eligible for transfer." (*Id.* at P 23.)

In January of 2003, Maddie attempted to transfer into the Automotive Product Marketing Group ("APM") and APM offered him a position. APM advised Plaintiff that they would "coordinate approval of the transfer with O'Shea." (*Id.* at PP 26-27.) O'Shea allegedly did not approve the transfer and APM eventually froze all transfers into the group. (*Id.* at PP 28-29.) O'Shea told Plaintiff that he "only transfers the right people out of the group." (*Id.* at P 29.)

On or about April, 28, 2003, Maddie [*4] alleges that O'Shea confronted him about arriving late to work. (*Id.* at P 31.) Allegedly O'Shea acted in a manner that caused Maddie to think he was about to be physically attacked. (*Id.* at PP 31-37.) The altercation ended with O'Shea demanding Maddie's resignation. (*Id.* at P 31.)

Maddie contacted Cynthia Erickson, the Director of Human Resources, to complain. (*Id.* at PP 39-40.) Erickson told Maddie to stay away from O'Shea and "await her call while she contacted O'Shea and the Project Manager to get their side of the story." (*Id.* at P 39.)

On April 30, 2003, Plaintiff contacted Erickson to inquire about the status of her investigation. (*Id.* at P 40.) During the call, Erickson allegedly told Plaintiff that the company Human Resources Department was processing his resignation. (*Id.*) Erickson said that O'Shea informed her that Maddie had resigned. (*Id.* at P 41.) Erickson said her investigation was ongoing. (*Id.* at PP 41-42.) Plaintiff advised Erickson that he had not resigned. (*Id.* at P 40.)

On May 1, 2003, Erickson e-mailed Plaintiff stating that "Don [O'Shea] is under the impression that he accepted your resignation effective Monday 4/28 and [*5] the HR Operations dept has processed paperwork to that effect. I have not been able to reach Don today to discuss this further. I can confirm today that you no longer work for Siebel. . ." (*Id.* at P 44.)

On July 25, 2003, Siebel Systems' Senior Corporate Counsel advised Plaintiff that Siebel had completed its investigation of his allegations. She concluded that Plaintiff "was an at-will employee who was terminated lawfully by Siebel Systems, Inc." (*Id.* at P 55.) In August of 2003, another Corporate Counsel concluded that O'Shea "was not responsible for [Plaintiff's] ultimate departure and supported him during his tenure." (*Id.* at P 58.) On May 17, 2004, Plaintiff filed this lawsuit.

## ANALYSIS

### I. Defamation (Count I)

Plaintiff argues that in October or November of 2002, O'Shea made a defamatory statement that Plaintiff was a performance issue and being counseled and therefore was not eligible to transfer. (R. 1-1, Pl's Comp. at P 23.) Defendants argue that: (1) the one year statute of limitations bars Plaintiff from bringing this action; (2) the alleged statement did not contain an objectively verifiable fact and was therefore a constitutionally protected [*6] opinion; and (3) Siebel Systems cannot be held liable for a defamation tort committed by O'Shea. (R. 6-1, Def. Mot. to Dis. P 2).

#### A. Statute of Limitations

[HN2]Courts should only grant a motion to dismiss based on statute of limitations if the plaintiff can prove no set of facts that would support a cause of action. *See* 735 ILCS 5/2-619. Defendants correctly points out that [HN3]Illinois has a one-year statute of limitations in defamation actions. *See* 735 ILCS 5/13-201. In certain defamation actions, however, courts have applied the discovery rule. *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 61 Ill.2d 129, 334 N.E.2d 160, 161 (1975); *Schweihs v. Burdick,* 96 F.3d

917, 920 (7th Cir. 1996). Specifically, if the confidential nature of the defendant's publication prohibits the plaintiff from early discovery of the defamation, then the statute of limitations commences when the plaintiff knew or should have known of the defamatory statements, not from the date of publication. *Id.* Courts have applied this reasoning to oral statements as well as written communications when the plaintiff was not present at the time of [*7] the statement and the statement was not made publicly. See *Luttrell v. O'Conner Chevrolet, Inc.*, 2001 U.S. Dist. LEXIS 14651, No. 01 C 0979, 2001 WL 1105125, at *6-7 (N.D. Ill. Sep. 19, 2001). Plaintiff has alleged that he was not present when the alleged statement was made in 2002, that he did not learn of the statement until April of 2004, and had no reason to know of it earlier (R.1-1, Pl's. Comp. at P 61.) Plaintiff has alleged facts that, if true, could trigger the use of the discovery rule. Accordingly, the Court cannot conclude at this stage that Plaintiff's defamation claim is time-barred.

### B. The Allegedly Defamatory Statement

The Court is not persuaded by Defendants' argument that O'Shea's alleged statements amount to constitutionally protected opinions. [HN4]The Illinois Supreme Court has held that statements are only constitutionally protected when they cannot reasonably be interpreted as stating actual facts. *Bryson v. News Am. Publ'ns, Inc.*, 174 Ill.2d 77, 100, 220 Ill. Dec. 195, 672 N.E.2d 1207, 1220 (Ill. 1996). Plaintiff has alleged that O'Shea said that Plaintiff was a performance issue and being counseled and therefore not eligible for transfer. Whether Plaintiff [*8] was "being counseled" can reasonably be interpreted to be an objectively verifiable fact. Similarly, whether Plaintiff was ineligible for transfer can also be interpreted as an objective fact. The statement, therefore, is not a constitutionally protected opinion.

### C. Siebel's Liability

Plaintiff argues that Siebel Systems is vicariously liable for O'Shea's defamatory statements. [HN5]In order to hold an employer in Illinois vicariously liable for an employee's torts under the doctrine of respondeat superior, the employee must have committed the torts within the scope of his employment. *Pyne v. Witmer*, 129 Ill.2d 351, 359, 135 Ill. Dec. 557, 543 N.E.2d 1304, 1308 (Ill. 1989). An employer is subject to liability for defamatory statements made by an employee acting within the scope of employment. *Gianforte v. Elgin Riverboat Resort*, No. 02-02-1390, 2003 WL 22208916, at *3 (Ill.App. Ct. Sept. 17, 2003), citing Restatement (Second) of Agency § 247 (1958). The question of whether an act falls within the scope of an employee's employment generally lies with the jury. *Gaffney v. City of Chicago*, 302 Ill.App.3d 41, 49, 236 Ill. Dec. 40, [*9] 706 N.E.24 914 (Ill. App. Ct. 1998).

Plaintiff has alleged that O'Shea made defamatory statements in response to a request for a transfer from one department to another within the Siebel Corporation. (R. 1-1, Pl's Comp. at P 23.) Plaintiff also has alleged that O'Shea's supervisory duties included approving or denying transfers. (*Id.* at P 22.) Because O'Shea supported his denial of Plaintiff's transfer with the alleged defamatory statement, the Court cannot conclude at this stage that the defamatory statement falls outside the scope of his employment. Accordingly, the Court denies Defendants' motion to dismiss Count I.

### II. Intentional Interference with Plaintiff's Employment Expectancy (Count II)

Plaintiff alleges that Donald O'Shea intentionally interfered with Plaintiff's employment expectancy with Siebel Systems. O'Shea claims that as an employee of Siebel Systems he is a party to the contract and a party cannot tortiously interfere with its own contract.

[HN6]In order to succeed on a claim of tortious interference with an employment expectancy, a plaintiff must show: (1) the existence of a contract or a reasonable expectation of a continued business relationship; (2) [*10] the defendant's knowledge of the contract or expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach of the contract or prevented the expectancy from ripening; and (4) damage resulting from the interference. See *Cook v. Winfrey*, 141 F.3d 322, 329 (7th Cir. 1998); *Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 217 Ill. Dec. 720, 667 N.E.2d 1296, 1299 (Ill. 1996). Plaintiff has sufficiently alleged these four elements in his complaint.

Defendants point out that it is settled law that [HN7]a party cannot tortiously interfere with his own contract. The tortfeasor must be a third party to the contractual relationship. *Quist v. Board of Trs.*, 258 Ill. App.3d 814, 821, 196 Ill. Dec. 262, 629 N.E.2d 807 (Ill. App. Ct. 1994); *IK Corp. v. One Fin. Place Partnership*, 200 Ill. App.3d 802, 819, 146 Ill. Dec. 198, 558 N.E.2d 161 (Ill. App. Ct. 1990). In response, Plaintiff cites *Mittleman v. Witous* which states that [HN8]a defendant employee and a defendant company are not one in the same for purposes of the tortuous interference analysis if the defendant employee acted on his own behalf [*11] and not in the company interest *Mittleman v. Witous*, 135 Ill.2d 220, 250, 142 Ill. Dec. 232, 552 N.E.2d 973 (Ill. 1990), abrogated on other grounds, *Kuwik v. Starmark Star Mktg. Admin., Inc.*, 156 Ill.2d 16, 118 Ill. Dec. 765, 619 N.E.2d 129 (Ill. 1993). Plaintiff has alleged that Defendant O'Shea intentionally and willfully interfered with Plaintiff's employment expectancy solely for his own

benefit and/or to injure Plaintiff. This sufficiently alleges that O'Shea was acting on his own behalf and not in the company's interest.

Defendants' contention that Plaintiff cannot claim that O'Shea acted independently of Siebel in one count and claim vicarious liability of Siebel for O'Shea's actions in other counts is erroneous. [HN9]Under the federal rules, "a party may state as many claims as the party has, regardless of consistency." Fed.R.Civ.P. 8(e)(2). Plaintiff is "entitled to plead in the alternative." *Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir. 2000). Accordingly, the Court denies the motion to dismiss Count II.

### III. Civil Assault (Count III)

In Count III, Plaintiff claims civil assault against both Defendants. Plaintiff [*12] alleges that O'Shea "made an intentional, unlawful offer of corporal injury by force to Plaintiff under circumstances which create a well-founded fear of imminent peril to Plaintiff coupled with O'Shea's apparent present ability to effectuate the injury." (R. 1-1, Pl's Comp. at P 69.) Defendants argue that Plaintiff has pled himself out of court by stating facts in his complaint that even if true do not establish a claim for assault. The Court disagrees.

Viewing the complaint in the light most favorable to the Plaintiff, the Court cannot conclude that no jury would find Defendants' actions sufficient to establish an assault cause of action. As Defendants point out, the critical question is whether the totality of the circumstances - words, past conduct, and surrounding circumstances - can support a well-founded fear of imminent peril during the alleged instance of assault. (R. 6-1, Def. Memo in Support of Mot. to Dismiss P 9). Count III stands.

### IV. Tortious Investigation, Supervision & Retention (Count IV)

#### A. Tortious Investigation

Plaintiff premises Count IV on a claim for tortious investigation, supervision, and retention. In essence, Plaintiff alleges that Siebel's [*13] investigation of him was a complete sham. [HN10]Illinois, however, does not recognize a cause of action for negligent or tortious investigation. *Jones v. Britt Airways, Inc.*, 622 F. Supp. 389, 394 (N.D. Ill. 1985). [HN11]Federal courts have no power to create state law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1093 (7th Cir. 1999). Plaintiff's assertion that the Court can equate negligent investigation with "negligent undertaking" under Illinois common law is without merit. [HN12]A "negligent undertaking" claim in Illinois concerns primarily voluntary undertakings that result in bodily harm to a plaintiff. *Kohn v. Laidlaw Transit, Inc.*, 347 Ill. App.3d 746, 755, 283 Ill. Dec. 598, 605, 808 N.E.2d 564, 571 (Ill. App. Ct. 2004). Count IV does not allege facts to support a "negligent undertaking."

#### B. Tortious Supervision and Retention

Plaintiff's complaint alleges "from the start of Plaintiff's employment with Siebel through Siebel's investigation of O'Shea to the present, Siebel knew or should have known that O'Shea had a propensity for engaging in the types of wrongful and violent conduct described hereinabove. . ." (R 1-1, Pl's [*14] Comp. P 73.) Defendants assert that because Plaintiff made Siebel aware of O'Shea's unfitness after Plaintiff's injury occurred, Plaintiff has in effect shown that Siebel had no knowledge of O'Shea's unfitness before the injury. Defendants' argument is unpersuasive. Plaintiff can assert that he informed Siebel of O'Shea's misconduct while still maintaining that Siebel knew of should have known of O'Shea's unfitness. Plaintiff has properly put Defendants on notice that it is his intent to show that Siebel should have known about O'Shea's behavior and his propensity to engage in wrongful conduct. Accordingly, the Court grants the motion to dismiss the tortious investigation portion of Count IV and denies the tortious supervision and retention portions.

### V. Breach of Contract and the Covenant of Good Faith and Fair Dealing [1] (Count V)

> 1 Plaintiff admits that he is not bringing a separate tort claim for breach of covenant of good faith and fair dealing. (R. 11-1, Pl's. Memo in Opp. of Mot to Dis. P 11, n. 4.) Therefore, the Court need not address whether this claim is proper under Illinois law.

[*15] [HN13]To prevail on a breach of contract claim under Illinois law, a plaintiff must establish (1) the existence of a valid and enforceable contract, (2) his own performance under the terms of the contract, (3) a breach of the contract by the defendant, and (4) an injury suffered as a result of the defendant's breach. *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 311 (N.D. Ill. 1995); *Aardvark Art, Inc. v. Lehigh/Steck-Warlick, Inc.*, 284 Ill.App.3d 627, 220 Ill.Dec. 259, 672 N.E.2d 1271, 1275 (Ill. App. Ct. 1996). [HN14]Federal court is a notice pleading jurisdiction, therefore, complaints need not contain elaborate factual recitations. *Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

Plaintiff alleges that Siebel and Plaintiff entered an employment contract and agreed to abide by certain rules, policies, and procedures. (R 1-1, Pl's Comp. PP 7-

15.) Plaintiff also alleges that he complied with the rules and regulations set forth by Siebel. (*Id.* at P 78.) Plaintiff further alleges that Siebel breached that contract and Plaintiff suffered as a result. (*Id.* at PP 79-80.) These allegations [*16] sufficiently state a claim.

Although Defendants urge the Court to consider statements in its employment handbook, the Court cannot consider such materials on a Rule 12(b)(6) motion. See *Albany Bank & Trust Co. v. Exxon Mobil Corp., 310 F.3d 969, 971 (7th Cir. 2002)* [HN15]("documents that are neither included in the Plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss.") The Court also notes that the handbook is dated June 15, 2004 - more then one year after Plaintiff alleges Defendants terminated him. The Court denies the motion to dismiss Count V.

## VI. Intentional Infliction of Emotional Distress (Count VI)

Plaintiff alleges that O'Shea's conduct and Siebel's acquiescence of that conduct inflicted severe emotional distress on Plaintiff. Defendants argue that Plaintiff's allegations, even if true, do not rise to the objective standard necessary to sustain a claim of intentional infliction of emotional distress ("IIED") under Illinois law. The Court agrees with Defendants.

[HN16]To state a cause of action for IIED, a plaintiff must plead: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to [*17] inflict severe emotional distress or knew there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct caused severe emotional distress. See *Honaker v. Smith, 256 F.3d 477, 490 (7th Cir. 2001)*. Recovery under this theory does not extend to conduct which merely involves insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *McGrath v. Fahey, 126 Ill.2d 78, 86, 127 Ill. Dec. 724, 533 N.E.2d 806, 809 (Ill. 1988)*. With respect to the severity of Plaintiff's distress, "the law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Public Fin. Corp. v. Davis, 66 Ill.2d 85, 90, 4 Ill. Dec. 652, 360 N.E.2d 765, 767 (Ill. 1976)*, quoting Restatement (Second) of Torts § 46, comment j (1965).

[HN17]The Seventh Circuit has held that even with liberal notice pleading standards, Plaintiff must show that Defendants' actions were objectively outrageous and the harm caused was very severe to survive a motion to dismiss. *Schroeder v. Lufthansa German Airlines, 875 F.2d 613, 623 (7th Cir. 1989)* [*18] (holding that removing an innocent victim from her seat on a plan; confining her to the cockpit; and accusing her of being a terrorist was not outrageous enough to sustain a cause of action for IEHD)*Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993)* (conduct not extreme and outrageous where plaintiff was not permitted to supervise white employees; was reprimanded and falsely accused of poor performance; was excluded from office activities and decisions; was forced out of a management position and not given a promised promotion; and had her calls monitored and her car vandalized). In a similar case, a defendant fired a plaintiff based on an erroneous report that he had once been convicted of a crime and subsequently repeated the false information to third parties. *Socorro v. IMI Data Search, Inc., 2003 U.S. Dist. LEXIS 7400, No. 02 C 8120, 2003 WL 1964269, at *1 (N.D. Ill. April 28, 2003)*. The court granted the motion to dismiss because the conduct involved did not rise to the level of outrageous conduct necessary to state a claim. *Id. 2003 U.S. Dist. LEXIS 7400, at *5*.

While Defendants' actions in blocking Plaintiff's transfers, screaming at Plaintiff, and unfairly terminating his [*19] employment are, if true, deplorable, they do not rise to the level of outrageous conduct required by this tort. See *Schwartz v. Home Depot U.S.A., Inc., 2000 U.S. Dist. LEXIS 17744, No. 00 C 5282, 2000 WL 1780245, at *5 (N.D. Ill. Dec. 4, 2000)* (pattern of discrimination, failure to promote, and retaliation fell within the "unavoidable aspects of employment relationship" that does not constitute extreme and outrageous conduct), citing *Van Stan v. Fancy Colours & Co., 125 F.3d 563, 567 (7th Cir. 1997)*; see also *Mustari v. New Hope Acad., 2004 U.S. Dist. LEXIS 11780, No. 03 C 4507, 2004 WL 1375530 (N.D. Ill. June 21, 2004)*. [HN18]While losing one's job and having to relocate to find new employment is stressful, it alone does not rise to the level of severe emotional harm. Illinois has consistently denied claims premised on facts stronger than what Plaintiff has pled in this case. See, e.g., *Miller v. Equitable Life Assurance Soc'y, 181 Ill.App.3d 954, 957, 130 Ill. Dec. 558, 537 N.E. 2d 887, 889 (Ill. App. Ct. 1989)*. Accordingly, the Court grants Defendants' motion to dismiss Count VI.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. It is granted [*20] with respect to Counts IV (tortious interference) and VI. It is denied with respect to Counts I, II, III, IV (tortious supervision and retention), and V.

Dated: November 4, 2004

ENTERED

AMY J. ST. EVE

United States District Court Judge