**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT E. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 6558 |
| | ) | |
| FRIEND FAMILY HEALTH CENTER, INC., | ) | Honorable Judge John W. Darrah |
| a corporation, and | ) | |
| | ) | |
| REV. HENRY BARLOW, | ) | Magistrate Judge Denlow |
| an individual, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF ROBERT E. TAYLOR'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Plaintiff, Robert E. Taylor (hereinafter "Plaintiff" or "Taylor"), by and through his attorneys, Jenner & Block, LLP, submits this Memorandum in Opposition to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6). For the reasons stated below, the Court should deny the Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (hereinafter "Motion to Dismiss").

### STATEMENT OF FACTS

In Plaintiff's three-count Amended Complaint, Taylor alleges retaliation (Count I); intentional infliction of emotional distress against Friend Family Health Center, Inc. (hereinafter "FFHC") (Count II); and intentional infliction of emotional distress against Reverend Henry Barlow (hereinafter "Barlow") (Count III). In Count I, Taylor states that while employed at FFHC, he reported and opposed Barlow's continued sexual harassment of a co-worker. (Compl. ¶ 13-21.) In retaliation for his reporting and opposing the harassment, Barlow, the then-Chairman of FFHC's Board of Directors, threatened to end Taylor's employment with FFHC and

repeatedly pressured Taylor to "drop" the investigation of the co-worker's sexual harassment claims.  (*Id.* at 18, 20, 24-29.)  Eventually, in retaliation for refusing to "drop" the investigation, FFHC terminated Taylor's employment.  (*Id.* at 33.)

In support of Counts II and III, both of which allege intentional infliction of emotional distress claims, Taylor outlines the variety of ways in which FFHC and Barlow went above and beyond simply terminating Taylor's employment with FFHC.  For instance, Taylor describes how Barlow recruited and bribed current and ex-employees from FFHC to air their grievances against Taylor at Board meetings in order to provide a sham reason to fire Taylor.  (*Id.* at ¶¶ 25-27.)  Additionally, Taylor describes that an FFHC employee, with Barlow or at Barlow's request, intentionally subjected Taylor to emotional distress by breaking into his office and stealing possessions.  (*Id.* ¶ 29.)  Such action so alarmed Taylor that he filed a police report.  (*Id.* ¶ 30.)  Finally, Taylor describes a long pattern of false and inflammatory statements that both Barlow and FFHC gave (and continue to give) to Taylor's prospective employers.  Such behavior occurred several months and even years after Plaintiff's employment with FFHC was wrongfully terminated.  (*Id.* ¶¶ 36-43.)

In their Motion to Dismiss, Defendants seek to dismiss only Counts II and III, the intentional infliction of emotional distress claims.  Defendants argue that: (1) Plaintiff failed to meet the legal standard for pleading claims under Federal Rule of Civil Procedure 8; (2) the Illinois Human Rights Act preempts the intentional infliction of emotional distress claims; and (3) Plaintiff fails to state a cause of action for intentional infliction of emotional distress.

## ARGUMENT

Rule 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  For the purposes of a motion to dismiss, a court must accept the allegations in the plaintiff's well-pled complaint as true and must make all

reasonable inferences in favor of the non-moving party. *Abbott Labs. v. Sandoz, Inc.*, 532 F. Supp. 2d 996, 998 (N.D. Ill. 2007). A court should construe any ambiguities in the complaint in favor of the plaintiff. *Kelly v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998).

A.   ***Bell v. Twombly* Does Not Require Plaintiff to Engage in Fact-Pleading in Order to Survive Motion to Dismiss.**

The United States Supreme Court did not rule in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) that a plaintiff need engage in traditional fact-pleading in order to withstand a motion to dismiss. *Airborne Beepers and Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (noting that courts must read *Twombly* in connection with *Erickson v. Pardus*, 127 S. Ct. 2197 (2007)). Although Defendants attempt to argue otherwise, the law is clear that a plaintiff must provide only enough factual detail in the complaint to give the defendant fair notice of the claims against the defendant and of the evidence supporting those claims. *Id.*; *see also Erickson*, 127 S. Ct. at 2220 ("Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"). As detailed in Sections B and C, *infra*, Plaintiff's Amended Complaint provides sufficient factual detail to give the Defendants' notice of the intentional infliction of emotional distress claims brought against them and notice of the evidence available to support those claims.

B.   **The Court Should Deny Defendants' Motion to Dismiss Plaintiffs' Claims for Intentional Infliction of Emotional Distress (Counts II and III), Because Those Claims Are Not Preempted by the Illinois Human Rights Act.**

Defendants' argument that the Illinois Human Rights Act (hereinafter "IHRA") preempts Plaintiff's intentional infliction of emotional distress claims suffers from two fatal flaws: it ignores current case law and it ignores the Plaintiff's well-pled facts in the Amended Complaint. Defendants mistakenly rely on *Geise v. The Phoenix Co. of Chicago, Inc.*, 159 Ill.2d 507, 639 N.E.2d 1273 (Ill. 1994), which has been significantly narrowed by subsequent case law.

Although *Geise* suggested that the IHRA might preempt all common law tort claims that seek redress for injuries arising from civil rights violations, more recent decisions have eviscerated such a broad holding.  *See Arnold v. Janssen Pharmaceutica, Inc.*, 215 F.Supp.2d 951, 956 (N.D. Ill. 2002) (stating that defendant's reliance on *Geise* was "misplaced" because recent case law had "greatly clarified the relevant legal analysis."); *see also Spahn v. Int'l Quality & Productivity Center*, 211 F.Supp.2d 1072, 1075 (N.D. Ill. 2002) ("Recent decisions from this district have held that the IHRA did not preempt comparable intentional infliction of emotional distress claims."); *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 515-17, 687 N.E.2d 21, 23-24 (1997) (narrowing *Geise*).

*Current* case law holds that IHRA does not preempt common law claims where similar facts underpin both a plaintiff's civil rights claims and common law claims.  *Arnold*, 215 F.Supp.2d at 955; *see also Scott-Riley v. Mullilns Food Prods., Inc.*, No. 04 C 1368, 2004 WL 1557817, at *2 (N.D. Ill. July 7, 2004) (noting that IHRA does not preempt common law claims simply because those claims share factual elements in common with IHRA-governed claims). Instead, preemption exists only where the common law claim is "'inextricably linked' to [the] civil rights violation, such that there is no independent basis for the tort claim apart from the legal duties created by the IHRA." *Spahn*, 211 F.Supp.2d at 1074-45 (citing *Maksimovic*, 177 Ill.2d at 515-17, 687 N.E.2d at 23-24).  Thus, the issue is not whether similar facts underlie Plaintiff's Title VII and intentional infliction of emotional distress claims, but rather whether IHRA creates legal duties which form the basis of Plaintiff's intentional infliction of emotional distress claims.  *See Maksimovic*, 177 Ill.2d at 516-17, 687 N.E.2d at 23-24 (denying defendants' motion to dismiss plaintiff's claims of assault, battery and false imprisonment claims despite

plaintiff's Title VII claim because plaintiff could prove each element of the torts without reference to legal duties created by Title VII).

Federal and state courts in Illinois routinely allow tort claims to continue where the plaintiff can establish the elements of the torts without reference to legal duties created by Title VII. *See, e.g., id.*; *see also Rapier v. Ford Motor Co.*, 49 F. Supp. 2d 1078, 1079-80 (N.D. Ill. 1999) (allowing plaintiff's intentional infliction of emotional distress claim to move forward despite fact that incident involving pail of urine was also used to support plaintiff's sexual harassment claim); *Bustamante v. Tin, Inc.*, No. 07 CV 970, 2008 WL 360786, at *2-3 (N.D. Ill. Feb. 11, 2008) (refusing to dismiss intentional infliction of emotional distress claim connected to employer's discriminatory conduct when "if [plaintiff] were unable to prove that the conduct was [discriminatory], [plaintiff] might still be able to prove the elements of intentional infliction of emotional distress"); *Scott-Riley*, 2004 WL 1557817, at *2 (allowing plaintiff's intentional infliction of emotional distress claim to move forward despite fact that extreme incidents of sexual harassment by bosses also used to prove discrimination under Title VII); *Bruce v. South Stickney Sanitary Dist.*, No. 01 C 3578, 2001 WL 789225, at *4 (N.D. Ill. July 12, 2001) (stating "[i]t is premature for us to opine whether the evidence marshaled during discovery will support the tort claims independently of the civil rights claims" and allowing plaintiff's intentional infliction of emotional distress claim to move forward despite fact that incident involving male co-workers hiding in bathroom also used to support sexual harassment claim); *Benitez v. KFC Nat'l Mgmt. Co.*, 305 Ill. App. 3d 1027, 1037, 714 N.E.2d 1002, 1009 (Ill. Ct. App. 1999) (denying defendants' motion to dismiss for invasion of privacy and intentional infliction of emotional distress despite IHRA because plaintiff could prove each element of the torts without reference to legal duties created by Title VII).

Plaintiff has made specific and detailed allegations regarding FFHC's and Barlow's extreme and outrageous behavior which do not arise from or involve any legal duties created by Title VII. Defendants' wrongly mischaracterize Plaintiff's intentional infliction of emotional distress argument as solely based on FFHC's termination of Plaintiff. (*See* Mot. to Dismiss at 3-4.) Defendants ignore that Plaintiff also alleges that an employee of FFHC broke into his office at the direction of Barlow and stole property from that office. (Compl. ¶¶ 29-30.) Just because the outrageous incident occurred at work does not mean that Title VII created the duty for the FFHC employees not to steal from Plaintiff.[1] Plaintiff further alleges that Barlow orchestrated outrageous sham complaints and investigations of Plaintiff in an effort to create smoke-screen reasons to fire Plaintiff from FFHC. (*Id.* at ¶¶ 25-27.) Finally, Plaintiff alleges that Barlow and FFHC have continued to spread vicious and inflammatory falsehoods to Plaintiff's prospective employers, including that Plaintiff had engaged in inappropriate sexual conduct with co-workers, had engaged in highly unethical behavior and had committed felonies. (*Id.* ¶¶ 36-43.) Defendants' claim that such behavior by an ex-employer is an "ordinary incident of employment" or that such behavior is "inextricably linked" to Plaintiff's termination in violation of Title VII is entirely without merit. In fact, Taylor was no longer an FFHC employee at the time the Defendants made the statements. Moreover, in some instances, Taylor had not been an FFHC employee for *years*. Finally, none of the statements referenced Plaintiff's protected activity under Title VII, but instead discussed his sexual conduct and moral turpitude and which independently form the basis for Plaintiff's intentional infliction of emotional distress claims. Consequently, Defendants' preemption argument fails.

---

[1] Indeed, as demonstrated by the defendants' counterclaim in this very suit, an allegation of conversion—even if the alleged conversion occurred at work—is an actionable claim by itself.

C.     **Plaintiff's Allegations Show that Defendants Engaged in Extreme and Outrageous Conduct Outside of the Realm of "Routine Employment Decisions."**

In order to survive a motion to dismiss for claims of intentional infliction of emotional distress, a plaintiff must plead three elements: (1) the conduct of the defendants was extreme and outrageous; (2) the defendants either intended their behavior to inflict severe emotional distress or acted knowing that there was a high probability their conduct would cause severe emotional distress; and (3) the defendants' conduct actually caused severe emotional distress. *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 745, 742 N.E.2d 858, 867 (Ill. Ct. App. 2000) (citing *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (Ill. 1988)).  In their Motion to Dismiss, Defendants focus only on the first element of intentional infliction of emotional distress claims.  (*See* Mot. to Dismiss at 6.)  Although routine employment decisions do not support a cause of action for intentional infliction of emotional distress, employer conduct that amounts to objectively extreme and outrageous behavior rising above mere indignities and petty oppressions will support an intentional infliction of emotional distress claim.  *Id.* at 745, 533 N.E.2d at 866.

"When an employer's conduct is both coercive and retaliatory, courts have generally found the conduct to be extreme and outrageous, constituting a claim for [intentional infliction of emotional distress]."  *Id.* at 747, 533 N.E.2d at 867-68.  For example, in *Graham*, the plaintiff's employer, ComEd, retaliated against the plaintiff after he reported safety issues at ComEd's Dresden nuclear power station.  *Id.* at 738-39, 533 N.E.2d at 861-62.  As part of these retaliatory acts, ComEd initiated a sham investigation into the plaintiff's work history and spread damning, defamatory statements about the plaintiff, including that he had sexually harassed a co-worker; that he had threatened co-workers; and that he had damaged company property.  *Id.*  In addition to the sham proceedings, ComEd demoted the plaintiff.  *Id.* at 740, 533 N.E.2d at 863.  The court reversed the lower court's dismissal of the plaintiff's intentional infliction of emotional distress

7

claims. *Id.* at 748, 533 N.E.2d at 868. In doing so, the court differentiated the plaintiff's termination, which was an "everyday stress of the workplace," with the sham investigation, which "served no legitimate purpose [and] was retaliatory in nature." *Id.* The former behavior by ComEd could not serve as the basis of an intentional infliction of emotional distress claim; the latter could. *Id.*

In their Motion to Dismiss, Defendants do little to explain what types of conduct amount to routine employment decisions as opposed retaliatory acts. Illinois case law, however, demonstrates the distinction between permissible routine decision and retaliatory actions. For example, a nefarious sham investigation used to defame an employee is sufficient to form the basis of an intentional infliction of emotional distress claim, but the employee's demotion is not. *See id.* Calling an employee curse-words in front of employees and threatening her job on multiple occasions is sufficient to form the basis of an intentional infliction of emotional distress claim, but "ordinary insults" are not. *See Kamberos v. Infiniti of Orland Park, Inc.*, No. 02 C 3000, 2002 WL 31248538, at *2-3 (N.D. Ill. Oct. 4 2002).

FFHC's and Barlow's actions are not routine employment decisions. In fact, a significant portion of the Amended Complaint focuses on FFHC's and Barlow's conduct *after* Plaintiff no longer worked for FFHC. (*See* Compl. ¶¶ 36-43.) The Court would exceed logic to hold that such post-employment conduct was merely "incident to employment." *See Kassem v. Wash. Hosp. Cntr.*, 513 F.3d 251, 256 (D.C. Cir. 2008) (holding events that occurred after plaintiff's employment with defendant could not be ordinary intra-workplace conduct and reversing dismissal of plaintiff's intentional infliction of emotional distress claims). Moreover, like the actions of ComEd in *Graham*, the actions of FFHC and Barlow amounted to extreme and outrageous conduct: Barlow and FFHC employees constructed a sham investigation to humiliate

Plaintiff and sully his reputation, and Barlow bribed employees to participate in the proceedings by bartering with the employees' jobs.  (Compl. ¶ 25-27.)   Finally, Defendants repeatedly threatened Plaintiff, intimating that Plaintiff would "pay for not protecting" Barlow.  (*Id.* ¶ 18, 28.)  Defendants carried out these actions intentionally, with malice, ill will and spite, (*id.* ¶¶ 61, 70), causing severe emotional damage to Plaintiff (*id.* at ¶¶ 62, 71).  Thus, Plaintiff's Amended Complaint sufficiently alleges a cause of action against FFHC and Barlow for intentional infliction of emotional distress.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss at this early stage of pleadings and award Plaintiff all such other relief as this Court deems necessary and appropriate.

Respectfully submitted,

ROBERT E. TAYLOR,

Dated:  June 3, 2008

By:     s/ Elizabeth Coleman
            One of His Attorneys

Elizabeth Coleman (*IARDC # 6236597*)
Sara P. Leitenberger (*IARDC # 6293214*)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, Illinois  60611
Telephone (312) 923-2659
Facsimile:  (312) 840-7659

## CERTIFICATION OF SERVICE

      I hereby certify that on Tuesday, June 3, 2008, I electronically filed the foregoing **Plaintiff Robert E. Taylor's Memorandum in Opposition to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:


Paul E. Bateman
Michael A. Wilder
LITTLER & MENDELSON, P.C.
200 N. LaSalle Street
Suite 2900
Chicago, IL  60601


                             s/ Sara P. Leitenberger
                             Sara P. Leitenberger
                             IARDC # 6293214
                             JENNER & BLOCK LLP
                             330 N. Wabash Avenue
                             Chicago, Illinois  60611
                             Telephone (312) 923-8319
                             Facsimile:  (312) 923-8419