UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT TAYLOR, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 07 C 6558 |
| v. | ) |
| | ) Judge John W. Darrah |
| FRIEND FAMILY HEALTH CENTER, INC. and HENRY BARLOW, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Robert Taylor, brought suit against Defendants, Friend Family Health Center, Inc. ("FFHC") and Rev. Henry Barlow, alleging retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a) (Count I) and intentional infliction of emotional distress (Count II). Before the Court is Defendants' motion for summary judgment.

## BACKGROUND

FFHC is a not-for-profit community health center that provides a wide range of health and social services to people of all ages, regardless of their ability to pay. (Defs.' 56.1(a)(3), at ¶ 1.) Barlow became a member of FFHC's Board of Directors ("Board") in or about October 2001 and became Chairman of the Board in or about October 2003. (Defs.' 56.1(a)(3), at ¶¶ 3, 4.) Taylor was employed as FFHC's CEO from May 15, 2002 until his termination on March 3, 2004. (Defs.' 56.1(a)(3), at ¶ 6.) As CEO, Taylor reported directly and solely to the Board. (Defs.' 56.1(a)(3), at ¶ 12.)

On December 22, 2003, Carol Sissac, then an Administrative Assistant at FFHC, complained to Taylor, her immediate supervisor, that Barlow had sexually harassed her. (Defs.' 56.1(a)(3), at ¶ 45.) On December 24, 2003, Taylor instructed Pilar McKinney, the Interim Human Resources Specialist, to take Sissac's statement regarding her allegations. (Defs.' 56.1(a)(3), at ¶ 46.) The same day, Taylor called Thomas Jones, the Vice Chairman of the Board, informed him of Sissac's allegations and told Jones that he was "turning the matter over to him." (Defs.' 56.1(a)(3), at ¶ 46.) Jones told Taylor that he would inform Barlow of the allegations. (Pl.'s 56.1(b)(3), at ¶ 85.) However, Barlow learned of Sissac's allegations from another Board member before Jones informed Barlow. (Pl.'s 56.1(b)(3), at ¶ 85.)

At the February 11, 2004 meeting of the Executive Committee[1], Barlow brought up the sexual harassment allegations against him. (Defs.' 56.1(a)(3), at ¶ 48.) Jones recommended that Taylor hire an attorney to investigate Sissac's claims against Barlow. (Defs.' 56.1(a)(3), at ¶ 48.) In April 2004, an outside attorney, Nigel Telman, conducted an independent investigation into Sissac's sexual harassment allegations. (Defs.' 56.1(a)(3), at ¶ 49.) Telman interviewed several witnesses over the course of ten days. (Defs.' 56.1(a)(3), at ¶ 50.) All of the witnesses, with the exception of Sissac, said that they had never witnessed any inappropriate interaction between Barlow and Sissac or any other FFHC employee. (Defs.' 56.1(a)(3), at ¶ 49.) Telman determined that Sissac's allegations did not rise to the level of sexual harassment as a matter of law. (Defs.' 56.1(a)(3), at ¶ 50.)

---

[1] The Executive Committee is composed of four members of the Board and typically meets before each Board meeting. (Defs.' 56.1(a)(3), at ¶¶ 7, 8.)

At the January 28, 2004 Board meeting, Barlow moved to terminate Taylor, ostensibly due to concerns regarding Taylor's job performance and complaints he received from employees concerning Taylor's management techniques. (Defs.' 56.1(a)(3), at ¶ 37.) The Board voted not to terminate Taylor. (Defs.' 56.1(a)(3), at ¶ 38.) However, on March 2, 2004, the Board unanimously voted to terminate Taylor. (Defs.' 56.1(a)(3), at ¶ 40.)

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## ANALYSIS

### *Title VII - Count I*

Taylor alleges that Defendants violated Title VII by terminating him in retaliation for his participation in the investigation of Sissac's sexual harassment complaints against Barlow. Taylor may establish his retaliation through either the direct method or the indirect, burden-shifting method. *Amrhein v. Health Care Service Corp.*, 546 F.3d 854, 858 (7th Cir. 2008) (*Amrhein*). Under the direct method, Taylor must show: (1) that he engaged in a statutorily protected activity; (2) a materially adverse action taken by his employer; and (3) a causal connection between the two. *Amrhein*, 546 F.3d at 858. Under the indirect method, Taylor must establish a *prima facie* case by proving that he (1) engaged in a statutorily protected activity; (2) met his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Amrhein*, 546 F.3d at 859. If Taylor can establish a *prima facie* case, the

4

burden shifts to Defendants to produce a non-discriminatory reason for their action; the burden then shifts back to Taylor to show the proffered reason is pretextual. *Amrhein*, 546 F.3d at 859. Taylor asserts that he can prevail through both methods.

Turning first to the direct method, the parties dispute whether Taylor engaged in a statutorily protected activity. Assisting another employee with her discrimination claim is protected "opposition conduct" under Title VII. *McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir. 1996). It is undisputed that Taylor instructed McKinney to take Sissac's statement and informed Jones of the allegations. While Defendants dispute the extent of Taylor's role in the eventual investigation, there can be no question that Taylor's actions – reporting Sissac's allegations and ordering HR to start an investigation – was of assistance to Sissac in pursuing her sexual harassment claims. Thus, Taylor has engaged in a statutorily protected activity.

Defendants do not deny that Taylor has met the second prong of the direct method – suffering a materially adverse action by Defendants. Thus, the remaining question is whether Taylor can show a causal connection between the two.

To establish this link, Taylor relies on his own deposition testimony and the affidavit of James Obese, an FFHC employee. Taylor testified that after Barlow found out about Sissac's sexual harassment complaint, Barlow called Taylor to ask why Taylor had not informed him of Sissac's allegations. Taylor testified that during this call, Barlow threatened him, stating (i) "I'll kick you're [sic] a\*\*" and (ii) "you don't know who the f\*\*\* you are messing with." Taylor testified that Barlow stated that Barlow was Taylor's boss, that Taylor was supposed to protect Barlow and that if Taylor did not protect Barlow, then Taylor would wish he had.

5

Taylor also testified that Barlow called a second time a few days later and told Taylor (i) "You don't know who the f*** you're messing with," (ii) "You're supposed to protect me," (iii) "I am a preacher," (iv) "Stuff like this would ruin my reputation," (v) "Make that b**** stop complaining" and (vi) "You think you're tough? You haven't seen tough." According to Taylor, Barlow also stated that the church for which he works is in one of the toughest neighborhoods in the city and that "[t]hose people owe me, and I could have one of them take you out at any time." Taylor testified that he received between five to ten similar calls from Barlow in or about January 2004 and that beginning with the third call, Barlow said he would fire Taylor if Taylor did not protect Barlow.

Finally, Taylor testified that on the evening of January 14, 2004, Barlow, Taylor and Obese were at FFHC for a meeting of the Executive Committee. That night, according to Taylor, Barlow told Taylor, "My name has never been dragged through the mud in my life, and those who do will pay because of this." Taylor has provided an affidavit from Obese corroborating his testimony with respect to Barlow's statement. Additionally, Taylor testified that, while yelling this and other statements at Taylor, Barlow repeatedly reached into a large coat that he was wearing.

Defendants respond that Taylor's testimony on these points and Obese's affidavit should be stricken. Defendants argue that Taylor's testimony contains inadmissible hearsay, speculation and facts about which he has no personal knowledge and that Obese's affidavit is without foundation and is based on hearsay. Defendants' argument is not persuasive. The relevant portions of Taylor's testimony are not speculative but rather based on his own perception of the statements allegedly made by Barlow. Furthermore, Defendants are incorrect

that the evidence of Barlow's alleged statements is hearsay. *See* Fed. R. Evid. 801(d)(2) (admissions by party-opponent not hearsay). At the summary judgment stage, the Court must "assume that [Defendants] made the statements attributed to them." *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999). Thus, assuming that Barlow did make the alleged statements, Taylor has shown that Barlow threatened retaliation, including Taylor's termination, for Taylor's assistance to Sissac. Therefore, Taylor has met his burden of showing a causal connection between his actions with respect to Sissac's complaints and his termination.

Taylor has thus satisfied all three prongs of the direct method of showing retaliation in violation of Title VII. Therefore, Defendants' motion for summary judgment with respect to Count 1 is denied.[2]

*Intentional Infliction of Emotional Distress - Count II*

Under Illinois law, if a plaintiff is to prevail on a claim for intentional infliction of emotional distress, "(1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress." *Lewis v. School Dist. #70*, 523 F.3d 730, 746 (7th Cir. 2008) (*Lewis*) (quoting *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir.2001) (*Honaker*)). The standard is high and "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not sufficient for liability. *Lewis*, 523 F.3d at 746. Furthermore, there is a heightened standard for claims brought in an employer/employee context. *See Fang v. Village of*

---

[2]Because Taylor has met his burden under the direct method, it is not necessary to consider whether Taylor might also be able to proceed under the indirect burden-shifting method.

*Roselle*, 1996 WL 386556 (N. D. Ill. July 5, 1996). "[A]ctions during the course of business that result in emotional distress . . . cannot be classified as 'extreme and outrageous' unless they 'go well beyond the parameters of the typical workplace dispute.'" *Lewis*, 523 F.3d at 747 (quoting *Honaker*, 256 F.3d at 491). However, "courts have found extreme and outrageous behavior to exist where the employer 'clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment.'" *Lewis*, 523 F.3d at 747 (quoting *Honaker*, 256 F.3d at 491).

In this case, the conduct alleged by Taylor, specifically Barlow's alleged statements to Taylor, qualify as extreme and outrageous. According to Taylor's testimony, Barlow called Taylor between seven and twelve times during the course of one month, repeatedly threatening Taylor with physical violence and termination. Barlow's alleged conduct far exceeds the "typical disagreements" and "job-related stress" of the "average work environment." Furthermore, an individual who makes statements such as those alleged here clearly intends his conduct to inflict severe emotional distress or, at a minimum, knows it is highly likely to do so. Finally, Taylor has testified that he has suffered severe anxiety, nausea, headaches, depression, sleepless nights, lack of trust, fear and fatigue as a result of Defendants' actions. Defendants make a cursory argument that these symptoms are not severe enough to support a claim for intentional infliction of emotional distress but fail to cite any case law directly on point. Indeed, Taylor's alleged symptoms are similar to those that Illinois courts have found adequate to support a claim. *See Honaker*, 256 F.3d at 496 (citing *Amato v. Greenquist*, 287 Ill. App. 3d 921 (1997) (plaintiff's allegations of "depression, despair, insomnia, anxiety, nervousness and emotional trauma" sufficient to allege a claim)).

Therefore, because Taylor has introduced evidence sufficient to support a claim for intentional infliction of emotional distress, Defendants' motion for summary judgment is denied with respect to Count II.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied.

Dated: 8-13-09

JOHN W. DARRAH
United States District Court Judge